```
 1              * * * EXCERPT OF PROCEEDINGS * * *
 2                        DANIEL SOTO,
 3   having been duly sworn, was examined and testified as
 4   follows:
 5                      DIRECT EXAMINATION
 6   BY MR. STUBBS:
 7        Q    Officer Soto, when were you employed by the
 8   Gallatin Police Department?
 9        A    February of 2010.
10        Q    Where were you employed prior to your employment
11   with the Gallatin Police Department?
12        A    The City of Ridgeland, which is in Ridgeland,
13   Mississippi.
14        Q    Do you recall the case when you were a police
15   officer for the City or Ridgeland against a gentleman
16   named Charles Whitfield?
17        A    Yes, sir, that's correct.
18        Q    And did you, in fact, arrest him for DUI?
19        A    That is correct.
20        Q    And testified in his case where the State
21   obtained a conviction against him?
22        A    Yes, sir, that's correct.
23        Q    Did you testify in that case falsely?
24        A    No, sir.
25        Q    You did not.  You weren't on the witness stand?
```

EXHIBIT 9

3

```
 1        A    Can I elaborate on that?
 2        Q    Yes.
 3        A    Okay.  What happened, there was a traffic stop
 4   happening approximately 2008 on Mr. Whitfield, and I was
 5   asked in court about a video.  And at that time, at our
 6   police department, when you pulled up to the police
 7   department there was antennas outside the police
 8   department.  So as soon as your vehicle got close enough
 9   to it, it would download videos to a server.
10             And during the trial, at a later date, I went
11   and requested that video from our evidence.  Whereas, the
12   City of Gallatin, I can burn my own video from there.  At
13   that time, at the agency I worked at, you were not able to
14   do that.
15        Q    Did you, in fact, testify that there was no
16   video and the State eventually reached a conviction?
17        A    No, sir.  They asked me, and I said I could not
18   recall if there was a video or not, from my understanding.
19        Q    And was, in fact, a motion for a new trial filed
20   and a video was found of that stop?
21        A    Yes, sir.  At a later date.
22        Q    And, in fact, did the video reflect that your
23   testimony had not been truthful on how you represented the
24   facts as to the arrest?
25        A    Mr. Whitfield refused to do anything.  He
```

4

```
 1   refused to do field sobriety; he refused to cooperate.
 2   The only conflict that came up was with the time that
 3   Mr. Whitfield exited his vehicle.  I said that he stumbled
 4   back.  And on video -- and at a later date, which I was
 5   not at that trial at the later date, they said that he did
 6   not stumble backwards during that.
 7        Q    So the video was not consistent with what your
 8   testimony had been, right?
 9        A    My opinion, yes.  Their opinion, no, sir, it was
10   not.
11        Q    Do you recall another case involving the
12   defendant named Mr. Clack, Daniel Clack?
13        A    Briefly.  I don't remember much about that case.
14        Q    You don't remember much about the case?  Was it
15   a DUI case in which you testified again that there was no
16   video, and the case was overturned after video showed up
17   after his conviction?
18        A    This is the first that I've heard of that.
19        Q    You're not aware of that?
20        A    No, sir.  I went to trial on Mr. Clack, he was
21   found guilty.  I had no idea that there was a retrial or
22   that he did file an appeal.  I was never asked to come
23   back to that case.
24        Q    Didn't you leave the City of Ridgeland Police
25   Department because of false testimony in these cases?
```

5

1    A    No, sir. I left the City of Ridgeland Police
2  Department because my wife took a job at Vanderbilt
3  Children's Hospital. I had been trying for about a year
4  to get employed here, and I was in the hiring process with
5  the City of Gallatin and the City of Smyrna.
6    Q    How many times have you been sued now for
7  providing false testimony in DUI cases in Ridgeland?
8    A    There was one suit filed.
9    Q    Against you? Who was that?
10   A    Mr. Whitfield, the first case that you stated.
11         MR. STUBBS: That's all I've got, Judge.
12         THE COURT: Okay.
13         General.
14                CROSS-EXAMINATION
15  BY GENERAL WYLLIE:
16   Q    Mr. Soto, you were giving an explanation for the
17  testimony in the Whitfield case and Mr. Tubbs cut you off.
18  What else do you want to say about when you pulled up to
19  the police department and how those videos were downloaded
20  and how you weren't allowed to access them?
21   A    When you pull up, it automatically downloads to
22  a server, which means I have no access to alter the video,
23  delete the video, much less get the video. In order to
24  get a copy of the video, you have to go to an evidence
25  room, which is protected by a metal cage, and speak with

1  an evidence tech. At that time, you request the evidence
2  you need for trial, which would have been that DVD. I was
3  told by the evidence techs that there was no video.
4        So when I was asked about it in court, I advised
5  I could not recall if there was or not. Somehow, I don't
6  know how the video was found, but I requested video for
7  that case for the initial trial and all that was
8  documented. Not one time did I do anything with that
9  video. It wouldn't have helped me at all. Mr. Whitfield
10 refused to do field sobriety, he refused to do absolutely
11 everything. So I did everything I could in my capability
12 to receive that video and was told by evidence techs that
13 there was no video of that case.
14      Q    And did you feel like you were dishonest on the
15 stand in that case?
16      A    I do not. Absolutely not.
17      Q    And when you were sued by Mr. Whitfield, what
18 was the outcome of that federal lawsuit?
19      A    They never would tell me. It just ended. After
20 a deposition, it was ended.
21      Q    So you didn't have to pay any money to him?
22      A    Absolutely not.
23      Q    So that lawsuit against you, then, was not
24 successful in that report?
25      A    To my knowledge. I asked about it and they

7

1  wouldn't tell me.  They just said it was over with.
2       Q    And how many people do you think you arrested
3  while you were with the City of Ridgeland for a DUI?
4       A    Probably close to 1,000.
5       Q    If I started going through the list of names of
6  those 1,000 people, would you be able to tell me of every
7  single face, whether or not there was a video?
8       A    No, ma'am.
9       Q    And how did you find out if there was a video in
10 cases?
11      A    I was told at a later date -- I was called in
12 and asked about it, and they said that there was one --
13 that a video was found.
14      Q    Well, forget Mr. Whitfield.  If you wanted to
15 know -- or if I asked you of all the 1,000 names and you
16 had to go check with it, what would you do?
17      A    I would go to our evidence room, and there is a
18 clip board where you request evidence.  And at that time,
19 the evidence techs -- which we had several because it's a
20 bigger department -- they go and locate it, and you have
21 to sign out for it.  And I was told that there was no
22 video on that case.
23      Q    So you were acting in good faith then when you
24 said that on the stand?
25      A    Yes, ma'am.  Absolutely.

8

```
 1                THE COURT:  Okay.
 2                Anything else, Mr. Stubbs?
 3                MR. STUBBS:  Yes, Your Honor.  Just
 4   briefly.
 5                      REDIRECT EXAMINATION
 6   BY MR. STUBBS:
 7        Q    I was actually looking at the wrong sheet, and I
 8   may have given out the wrong copy of that.
 9                The same case, the charges against Mr. Whitfield
10   in that case were dismissed, were they not, on appeal when
11   they discovered that you had not given true testimony
12   about the existence of the video tape?
13        A    From my understanding it was because a due
14   process because his attorney said that he was not given
15   all the evidence on that case, which would have been the
16   video.
17                MR. STUBBS:  Judge, I think that's all I
18   got.  I'm going to need to make this an exhibit and give
19   the Court a copy, as well, for the record.
20                THE COURT:  Okay.  We will make this
21   Collective Exhibit A for purposes of this motion and
22   hearing.
23                (Whereupon, the above-mentioned document
24                was marked as Collective Exhibit A.)
25                THE COURT:  Is it Sergeant or Officer?
```

9

1     THE WITNESS: It's Sergeant, sir.
2     THE COURT: Sergeant Soto, tell me again
3  why you left Ridgeland. Are you telling me under oath
4  that you were not fired?
5     THE WITNESS: No, sir, I was not fired.
6     THE COURT: Tell me why you left.
7     THE WITNESS: I resigned and took a job
8  with the City of Gallatin.
9     THE COURT: And that's because your wife
10 got a job at Vandy?
11    THE WITNESS: At Vanderbilt Children's
12 Hospital. Yes, sir.
13    THE COURT: All right, sir.
14    MR. STUBBS: Let me ask one more after
15 that.
16    THE COURT: Go ahead.
17         FURTHER DIRECT EXAMINATION
18 BY MR. STUBBS:
19    Q    Let me ask you this -- and you're under oath.
20 Were you given the option of resigning or being terminated
21 after these cases came up with the City of Ridgeland?
22    A    There is no "cases." I was brought in and asked
23 about one particular case, which was Mr. Whitfield. I
24 resigned. I was not fired.
25    Q    You resigned when they brought up the case about

```
 1  Mr. Whitfield?
 2       A    Shortly after that.  Yes, sir.
 3       Q    Was the fact that they brought that up -- if you
 4  hadn't resigned were you concerned you were going to be
 5  terminated?
 6       A    No, sir.  I was not concerned about being
 7  terminated at all.
 8       Q    So no one from the Ridgeland Police Department
 9  indicated to you that if you didn't resign you were going
10  to be terminated?
11       A    No, sir.
12                THE COURT:  Okay.
13                Sergeant Soto, thank you.  You may be
14  excused.
15                (Whereupon, the examination of this witness
16                was temporarily concluded and other matters
17                were taken up.  His examination resumed as
18                follows:)
19                THE COURT:  He's still under oath.  Go
20  ahead.
21                  FURTHER DIRECT EXAMINATION
22  BY MR. STUBBS:
23       Q    Officer Soto, when I was examining you
24  previously, I specifically asked you whether or not your
25  resignation was in the face or in response to a
```

```
 1   notification that you were going to be terminated from the
 2   Ridgeland Police Department.  And you denied that, didn't
 3   you?
 4        A    You asked me if I was going to be terminated
 5   from the Ridgeland Police Department.
 6        Q    I've asked you if you were going to --
 7        A    You asked me a question.  If you're going to ask
 8   me a question, let me answer your question.
 9             You asked me if I was terminated from the
10   Ridgeland Police Department.  I advised you that I was
11   not.
12             Then you asked me -- well, go ahead and ask me a
13   question.
14        Q    I asked you if you resigned because you had been
15   notified you were going to be terminated.  You said, "no,"
16   under oath.
17        A    You asked me if I was going to be resigned -- if
18   I had the option.  You asked me if I had the option of
19   being terminated or resigning.
20             MR. STUBBS:  Judge, how difficult would it
21   be to get the court reporter to go back to his testimony?
22             THE COURT:  How difficult would it be?
23             THE COURT REPORTER:  We would just need to
24   take a brief recess, but I can go back.
25             THE COURT:  Let's take a brief recess.
```

```
1                MR. STUBBS:  Let's find out what he
2   testified to.
3                THE COURT:  Will do.
4                You may step down.
5                THE WITNESS:  Yes, sir.
6                We will be in recess.
7                (Whereupon, a brief recess was taken.)
8                THE COURT:  Okay.  Mr. Soto is back on the
9   witness stand.  I think our court reporter has given you a
10  copy of the transcript -- or a copy of the testimony?
11               MR. STUBBS:  I was just going to have her
12  read it back.  Actually, part of it is the Court's
13  examination.
14               THE COURT:  Okay.
15               (Whereupon, the court reporter read back
16               the previous examination of Daniel Soto.)
17               THE COURT:  Go ahead.
18  BY MR. STUBBS:
19       Q    Sergeant Soto, that was your testimony not an
20  hour or so ago, an hour and a half ago, in this courtroom.
21  Do you wish to correct that at this time?
22       A    No, sir.  I didn't have any concern about being
23  fired because I didn't believe I had done anything wrong,
24  sir.
25               THE COURT:  That's not the question.
```

```
 1   That's not the question.
 2             Go ahead.
 3             MR. STUBBS:  May I approach the witness,
 4   Judge?
 5             THE COURT:  Go ahead.
 6   BY MR. STUBBS:
 7       Q    Let me show you a copy of this letter, Sergeant
 8   Soto.  Would you look that over, please.
 9       A    Okay.
10       Q    I'll show you a third page that says, "I, Chief
11   Jimmy Houston, certify that I have delivered a
12   pre-termination letter to Officer Daniel Soto."  And It's
13   got some signatures on it.
14            Is that a copy of your signature over the name
15   of Daniel Soto?
16       A    Yes, sir, it is.
17       Q    So you recognize that letter?
18       A    I recognize my signature.  Yes, sir.
19       Q    Do you not recognize the letter that it relates
20   to?
21       A    The one that you handed me first?
22       Q    Yes, sir.
23       A    Yes, sir, I do.
24       Q    You received that letter, a pre-termination
25   letter?
```

1  A    Correct.
2         MR. STUBBS:  Let's mark that as an exhibit
3  to his testimony, Judge.
4         THE COURT:  It will be Exhibit B to
5  motions.
6         (Whereupon, the above-mentioned document
7         was marked as Exhibit B.)
8  BY MR. STUBBS:
9  Q    Officer Soto, in fact, I specifically asked you
10 if you resigned in response to the threat of being
11 terminated for giving false testimony in cases.  You
12 corrected me, it was only one case, Mr. Whitfield's case.
13 But you denied that, didn't you?
14 A    I said that I did not resign under the fact
15 that -- I wasn't given the option of resigning or being
16 fired.
17 Q    I asked you if you were threatened with
18 termination, and you specifically said, "no."  That letter
19 right there says you're being terminated, doesn't it?
20 A    No, sir, it does not.
21 Q    And it actually adds an additional case to the
22 Whitfield case.  Some case named Spreafico or something.
23 That was another case you allegedly testified falsely in.
24 A    Yes, sir.
25       This was a pre-termination hearing where I could

15

```
 1  have brought evidence to that.  That's not saying that I
 2  was fired, sir.
 3       Q    I didn't ask you if you were fired.  I asked you
 4  if you resigned because of being threatened of being
 5  terminated for giving false testimony in these cases.  I
 6  told you and warned you specifically you were under oath.
 7  Your answer was "no, sir."
 8       A    Mr. Stubbs, I was completely confident that I
 9  would have kept my job by going there and giving evidence.
10  But at that time, I was already in the hiring process and
11  taking a job up here in the state of Tennessee.
12  Therefore, I did not go forward with bringing evidence or
13  trying to fight these accusations here.
14            MR. STUBBS:  That's all I have.
15            THE COURT:  Question, look at the letter
16  here.  Have you got a copy?
17            THE WITNESS:  Yes, sir, I do.
18            THE COURT:  Last paragraph.  It says,
19  "Based on the above information, it is my intention to
20  terminate your employment with the Ridgeland Police
21  Department.  I have scheduled a pre-termination hearing
22  for Monday, February 8th, 2010, at 1:30 p.m. in the
23  conference room adjoining my office.  You may have one
24  person present on your behalf for observation purposes
25  only.  Please be prepared to present any evidence that you
```

```
 1   may possess that would give reason to why this termination
 2   should not proceed."
 3                  You received a copy of this letter,
 4   correct?
 5                  THE WITNESS:  Yes, sir.
 6                  THE COURT:  And after this letter was
 7   received, did you resign from the police department?
 8                  THE WITNESS:  Yes, sir.
 9                  THE COURT:  Okay.
10                  Mr. Stubbs, I will allow you to on
11   cross-examination under Rule 608(b) ask him if he received
12   termination notice from the Chief of Police for
13   falsification or willful misrepresentation of the police
14   department incident reports and falsification or wilful
15   misrepresentation of police department incident reports.
16   Those are those two paragraphs there.  You can ask him
17   about that.
18                  After he testifies today, General, I don't
19   want this Sergeant testifying in my courtroom in the
20   future, period.  I'm going to ask that a copy of the
21   transcript of his testimony before and a copy of his
22   testimony now be forwarded to the District Attorney's
23   office for review for possible perjury.
24                  Let's move on and bring the jury in.
25                                    END OF REQUESTED EXCERPT.
```